# 882

In the Matter of NORTHERN ILLINOIS DEVELOPMENT CORPORATION, operating the Aurora Downs, Inc. (a wholly owned subsidiary), Debtor-Appellee.

Appeals of Orville P. FOX and St. Charles National Bank as Trustee under Trust No. 85, Respondents-Appellants.

Nos. 13742, 13814.

United States Court of Appeals Seventh Circuit.

Nov. 20, 1962.

Richard Shearer, St. Charles, Ill., Edward J. Wendrow, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., Redman, Shearer & Gorecki, St. Charles, Ill., of counsel for appellants.

Joseph L. Kadison, Wayland B. Cedarquist, Chicago, Ill., Charles H. Atwell, Aurora, Ill., Collen, Kessler & Kadison, Chicago, Ill., Mark A. Greenhouse, Chicago, Ill., Nelson, Boodell, Foster, Sugrue & Crowley, Chicago, Ill., of counsel, for appellees.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Orville P. Fox and St. Charles National Bank, as Trustee under Trust No. 85, the respondents-appellants, prosecute these consolidated appeals from orders of the District Court affirming orders of the Referee in Bankruptcy entered in a pro-

ceeding[1] in which Northern Illinois Development Corporation (NIDC) is the debtor. The orders, among other things, declare a land purchase agreement in which appellants are the sellers and NIDC is the purchaser,[2] to be in full force and effect; and approve a contract between NIDC and a third party for the sale of the property to the third party for $1,-500,000, subject to confirmation of a plan of arrangement filed by NIDC under which its priority and secured creditors would be paid in full and its unsecured creditors would receive 75% on their claims as fixed and allowed.

The appeals present the following basic contested issues:

(1) Whether the findings of fact and conclusions of law, approved by the District Court, that the land purchase contract had not been forfeited are supported by substantial evidence and represent the application of correct legal criteria.

(2) Whether either appellant has standing to object to the plan of arrangement or the contract for the sale of the property to the third party.

(3) Whether the referee had jurisdiction to determine the nature or extent of Fox's interest in pari-mutuel receipts under a covenant of the land purchase agreement.

St. Charles National Bank is the land trustee of the property which is the subject of the purchase agreement, and Fox is the sole beneficiary. The property consists of two tracts in North Aurora, Illinois; a 78 acre tract formerly used for harness racing and referred to as the Race Track, and a 43⅓ acre tract abutting a State highway and separated from the Race Track parcel by a railroad right-of-way. The articles of agreement for a warranty deed under which NIDC became the purchaser stipulated a purchase price of $1,300,000 to be paid in installments. In addition Fox was to receive 1% of the annual gross pari mutuel receipts from the operation of the race track. $300,000 of the purchase price was payable within 60 days from the date of the agreement and the $1,000,000 balance payable in 10 equal installments of $100,000 each, on May 14, 1958, and each succeeding year, with 5% interest on the unpaid balance. The agreement provided that the time of payment was to be of the essence; and that if the purchaser failed to make any payments or perform covenants, the agreement "shall at the option of [appellants] be forfeited", and "become null and void", and payments made thereunder were to be retained by appellants as liquidated damages.

The record discloses that NIDC paid $514,000 on account of the principal indebtedness and expended almost $1,000,-000 in improvements to the race track property. It expended another $121,217 in 1959 for the acquisition of additional land to enable it to complete a lease of the other tract for the construction and operation of a modern motel by Hilton Inns, Inc. Fox, by agreement with NIDC, has been receiving the Hilton rentals to apply on the balance due under the purchase agreement.

The installment and interest payment due in 1958 were paid late but were accepted by appellants. The initial racing meet, held in March, 1959, resulted in a net loss exceeding $150,000. In April of 1959, NIDC's president, Schwanz, requested a six months' extension on the 1959 installment. Fox told him to write Fox's attorney and explain what was

1. The proceeding was commenced by the filing of an involuntary petition in bankruptcy by three creditors seeking to have NIDC adjudicated a bankrupt. After reference to a referee, and prior to the filing of NIDC's answer and proposed arrangement under Ch. XI of the Bankruptcy Act, the appellants filed a petition for an immediate determination that the purchase agreement had been forfeited and that the subject property is not an asset of the bankrupt estate. NIDC filed a petition for determination of its interest in the land and appellants filed an answer.

2. NIDC became purchaser through an assignment of the agreement by David Schwanz, the original contract purchaser.

wanted and that "we could work it out". Schwanz wrote Fox's attorney and on June 19, 1959, the extension was granted subject to payment of interest then past due and to Fox's receiving assurance that current bills of NIDC which might become liens on the premises would be paid, and NIDC was advised that Fox would join in the proposed lease to Hilton Inns, Inc. providing the rent under that lease was assigned to him to apply on the purchase agreement. It was at this time that NIDC was negotiating for the Hilton lease and acquiring the additional land for such purpose at a cost of $121,217 which it paid. Fox advanced $10,000 for the purpose of removing liens in order to enable completion of the Hilton deal; he also paid $3,646.65 for real estate taxes which had become due.

By letter dated November 12, 1959, Fox notified NIDC that because of its failure to pay the 1959 interest and satisfy all current bills of the corporation "that five days from the date hereof Mr. Fox will take possession of the premises as provided in the agreement and all rights under the contract will be terminated for the existing default". Under date of November 17, 1959, Fox's attorney again wrote NIDC that "I must advise you and urge you again to make all haste in curing the default before it is too late".

Fox took possession November 25, 1959, and changed various locks at the Race Track. NIDC obtained a state court injunction to prevent Fox from withholding possession of the premises. Fox had applied to the Illinois Harness Racing Commission for 1960 racing dates for the track in his name. The temporary injunction was vacated in late January, 1960, and the injunction suit consolidated with a suit to quiet title which the appellants had filed. Both actions remained pending at the time of the entry of the orders appealed from. NIDC had also filed application for 1960 racing dates. Both applications were refused and neither NIDC nor Fox has been able to obtain racing dates for the track.

■ The referee found the evidence insufficient to support a forfeiture. He concluded that the appellants by their conduct have waived strict performance by NIDC and that to permit a forfeiture would be an unjust enrichment of the appellants. The District Court's order on review demonstrates a painstaking examination of the record and thorough consideration of the pertinent factors bearing on the issues to be resolved. In addition, the District Court observed that from statements made in the course of oral argument it appeared and was virtually admitted that Fox instigated the filing of the involuntary bankruptcy petition on November 2, 1960, by the three creditors and paid the filing fee. We agree with the conclusion reached by the referee and by the District Court—that the circumstances here involved preclude Fox from effecting a forfeiture.

Apart from the questions presented by the failure of the St. Charles National Bank to join in the purported notice of forfeiture and by the fact that subsequent to its purported "deadline" Fox through his attorney was still indicating that it was not "too late" to make the payments due, the record establishes a course of dealing which constitutes a waiver of adherence to the payment schedule of the agreement and evidences the appellants' willingness that NIDC use its available funds to enlarge and enable the development of the original 43⅓ acre tract under the proposed Hilton lease. The record indicates Fox was aware of the corporation's current financial status following the extensive improvements it made on the Race Track property and the $150,000 net loss incurred as the result of the first racing meet. Fox's conduct estops him from effecting a forfeiture and, under the circumstances involved, a forfeiture would result in an unconscionable and unjust enrichment.

We have examined the Illinois cases relied upon by the appellants and find nothing therein inconsistent with the District Court's affirmance on the facts and circumstances presented by the record in this case. Forest Preserve Real Estate Improvement Corporation v. Miller, 379 Ill. 375, p. 382, 41 N.E.2d 526,

p. 529 recognizes that where a vendor has by his conduct waived a right to declare a forfeiture any later resumption of that right must be on notice which is a reasonable one—and that each such case must be determined on its own peculiar facts. We are of the opinion that the instant case presents circumstances which would make any resumption of a right of forfeiture not only unreasonable but also unconscionable. We conclude that the findings and conclusions on the forfeiture issue, on which the District Court's affirmance rests, are supported by substantial evidence and represent the application of correct legal criteria.

■ The contract for sale approved by the orders affirmed by the District Court is by its terms subject to confirmation of the plan of arrangement proposed by NIDC. It is obvious that the rights of the appellants as secured creditors, recognized in the arrangement presented, are in no way affected by the approval of the contract for sale nor will they be by a confirmation of the proposed arrangement. Appellants have no standing to object on that score. Cf. Smith v. McKenna Brass Mfg. Co., 3 Cir., 98 F.2d 537 and In re Humeston, 2 Cir., 83 F.2d 187. We therefore find it unnecessary to consider the contention of appellants that the approval of the sale in question—of all of the corporation's assets—is erroneous in a Chapter XI proceeding. Nor are we persuaded that Fox's status as a minority stockholder of NIDC—as well as its major creditor—alters the matter. The dual relationship, on the facts and circumstances presented by this record, cannot serve to qualify Fox as a party whose interests may be adversely affected by the sale or an ultimate confirmation of the arrangement. On the record before us, the nature of the corporation's principal asset—a race track, the disastrous financial experience with the first racing meet, and the fact that the party who would have been purchaser under an earlier contract approved by the referee and the court withdrew therefrom, all serve to amply demonstrate the highly speculative nature of a purchase of the property for the use for which it is fitted —the use necessary to realization of its potential value. And, there is nothing in the record which indicates that a sale of the property under ordinary bankruptcy proceedings would produce any money for NIDC's stockholders—in fact all indications are to the contrary. On the peculiar circumstances of this case, whatever rights Fox has as a stockholder cannot be permitted to obscure his role as a major creditor whose interests are fully protected by the contract for sale which has been approved and by the plan of arrangement which is subject to confirmation.

■ We find no merit in appellants' contention that the referee lacked jurisdiction to determine the nature of Fox's interest in the pari mutuel receipts under the purchase agreement.[3] The referee determined that the pari mutuel payments are to continue during the life of Fox only. By the answer filed by appellants to the debtor's petition and by appellants' earlier petition for immediate determination the purchase agreement was submitted to the court for construction and interpretation. Fox therefore submitted to the summary jurisdiction of the bankruptcy court for all purposes of the con-

3. It is convenanted and agreed to "pay to Orville P. Fox so long as he shall live and so long as the part of the premises known as the Race Track * * * shall be used as a race track, an amount equal to One Per Cent (1%) of the annual gross pari mutuel receipts of the operation of the race track but in any event not less than One Thousand ($1,000.00) Dollars per year of operation, and that this covenant shall run with the land and be an obligation of all future parties in interest. Upon the failure of [purchaser or his assigns] to operate the Race Track at any time after three years from date hereof for reasons other than an act of God or legal prohibition, then in that event the [purchaser or his assigns] shall pay to Orville P. Fox the sum of Ten Thousand ($10,000.00) Dollars per year for each year of non-operation."

tract. In re California Eastern Airways, Inc., D. Dela., 95 F.Supp. 348.

The judgment order of the District Court in each of the appeals is affirmed.

Affirmed.